## KEEN *v.* MAYOR AND COUNCIL OF WAYCROSS.

1. While a municipal corporation may lawfully do such things as are necessarily incident to the proper discharge of its public functions, it is not, as a general rule, within the power of such a corporation to engage in an occupation or business such as is usually pursued by private persons.

2. Accordingly, the authorities of a city whose charter provides in general terms for the erection and maintenance of a system of water-works may have all such work done as may be necessary to connect the city's mains with the pipes of water-consumers, and may do all such acts as may be essential to protect its property from injury or destruction, or secure proper sanitation, and, generally, it may do everything necessary to render the system efficient and beneficial to the public; but such authorities can not lawfully engage in a general plumbing business, and, in the course thereof, sell supplies and materials to private citizens, and do contract work in placing the same upon their premises.

3. Engaging in such a business and having such work done are manifestly acts which are ultra vires; and while a person carrying on a similar business can not, on the ground that the same has been injured or destroyed by competition on the part of the city, maintain a petition for equitable relief, any citizen and taxpayer may, as such, obtain an injunction restraining the municipal authorities from doing such acts.

4. The charter of the city of Waycross contains nothing authorizing its mayor and council to do the acts complained of in the plaintiff's petition, and the court erred in refusing to grant an injunction.

Submitted June 3, — Decided July 7, 1897.

Petition for injunction. Before Judge Sweat. Ware county. February 9, 1897.

*Hitch & Myers*, for plaintiff.
*John C. McDonald*, for defendant.

LUMPKIN, P. J. As "a citizen and taxpayer of the city of Waycross," Keen instituted an equitable proceeding against the mayor and council of that city, the purpose of which was to enjoin its municipal officers from doing certain acts alleged to be ultra vires. The case made by his petition was, in brief, as follows: Under a license issued by the municipal authorities, he had "for some years past conducted in said city a plumbing and gas-fitting business." Early in the year 1896, the water-works commission, a co-ordinate branch of the city government, had "entered into active competition with [him] in the plumbing business and the keeping for sale and selling plumbers' supplies and furnishings," making contracts with, and doing "work for, the citizens of Waycross, in direct competition with [his] lawful and licensed business, and without the payment of tax or license." The "said business carried on by the mayor and council, as aforesaid, [was] illegal and

without warrant in law or by charter," and in consequence thereof he had sustained great loss, and was being daily injured and damaged. At the hearing, it appeared that the city was in fact engaged in a more or less general plumbing business, having purchased supplies, some of which were then on hand, and having furnished materials to and done work for such of its citizens as had applied to its superintendent to have pipes and fixtures placed in and upon their premises. On the supplies thus furnished and the work so done the city realized "a reasonable profit," which the water-works commissioners reported had "materially assisted [them] in keeping [their] accounts on the right side." It was contended by counsel for the defense that, as the plaintiff was an unskillful and incompetent plumber and did not do work to the satisfaction of the city's patrons, it had become necessary for the water-works commissioners to engage, to the extent indicated, in the plumbing business, in order to render the city's water-works system efficient and self-sustaining; and the act of September 19, 1889, authorizing the city to establish and maintain a system of water-works, and creating a board of commissioners to exercise supervision and control over the same, was relied on as conferring upon the municipal authorities full power in the premises to do everything necessary or expedient to bring about this result. The injunction prayed for was denied, and the plaintiff brings the case to this court for review.

1. The primary design of the creation of a municipal corporation is, that it may perform certain public functions as a subordinate branch of government; and while it is invested with full power to do everything necessarily incident to a proper discharge thereof, no right to do more can ever be implied. Accordingly, in the absence of express legislative sanction, such a corporation has no authority to engage in any independent business enterprise or occupation such as is usually pursued by private individuals. In other words, its legitimate duty is to deal with public affairs, and not those which are purely private and entirely unconnected with a proper administration of its governmental duties.

2. It follows, that unless the city of Waycross can show ex-

press legislative authority to engage in the business in which it has embarked, the acts of its officials of which the plaintiff complains are clearly ultra vires. We have no doubt that, under the act of 1889, upon which the city rests its defense, its board of commissioners have ample power to take such steps as are needful in order to render the water-works system of the city efficient and beneficial to the public. (See Acts of 1889, p. 829.) But the position of the city that, to bring about this result, it was necessary to engage in the plumbing business, is utterly untenable, because obviously not well founded in fact. It might as reasonably be urged that, in order to satisfy its patrons, it was necessary for the city to embark in the ice business, as an incident to its right to supply good drinking-water to its citizens. It was doubtless the intention of the legislature to confer power upon the municipal authorities to do everything essential to the establishment and maintenance of the city's water-works system, to provide for proper sanitation, and to promote the general success of the enterprise; but surely it was never contemplated that the city should engage in a general plumbing business, and in the course thereof sell supplies and materials to private citizens and do contract work in placing the same upon their premises. As incident to the general powers conferred upon the water-works commissioners, it was lawful for them to order all work done which was necessary for connecting the city's mains with the pipes of water-consumers, or for protecting the city's property from injury or destruction, or for requiring citizens to pay for the water furnished to them; but they could not, without overstepping the bounds of their authority in the premises, engage in a business purely for gain, and the carrying on of which was not essential to the accomplishment of any of the purposes above indicated. The water-works commissioners also have the power to require that all plumbing connected with the water-works shall be done in such manner as will effectuate these purposes, and to that end may supervise the plumbing; but it is one thing to devise a plan by which such work shall be done, and quite another thing to do the work itself.

3. It was insisted, however, that, conceding the city had no

right to conduct the business in question, this was a matter with which the plaintiff had no concern, and therefore he had no legal ground of complaint. Regarding the plaintiff merely in his capacity as a plumber, this point is well taken. Thus viewing him, the only effect of the city's action was to interfere, by way of competition, with a monopoly which he seems to have previously enjoyed. This immunity from the harassment of competition was but the result of mere chance, and he could assert no property right therein; for the law recognizes in no one a right to create or maintain a monopoly. "The only injury of which he can be heard in a judicial tribunal to complain is the invasion of some legal or equitable right. If he asserts that the competition of the [city] damages him, the answer is, that it does not abridge or impair any such right. If he alleges that the [city] is acting beyond the warrant of the law, the answer is, that a violation of its charter does not of itself injuriously affect any of his rights" as a licensed plumber entitled to pursue his calling in the city ; for the municipality "is not shown to owe him any duty," in that capacity, "which it has not performed." Railroad Co. *v.* Ellerman, 105 U. S. 174, citing cases to the same effect.

But it by no means follows that, as "a citizen and taxpayer of the city of Waycross," the plaintiff will not be heard to complain, or is without redress. "It is the prevailing rule that taxpayers may enjoin municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any mode which will injure the taxpayers,—such as making an unauthorized appropriation of the corporate funds, or an illegal disposition of the corporate property." 2 Beach on Injunctions, § 1300. "Following out the theory which regards the municipal corporation as a trustee for the inhabitants, it is almost, if not quite universally, conceded by the courts in the United States, that, in the event of the failure of the State law-officer to intervene by virtue of his statutory or implied power to protect the interest of the State and of the corporators, any property-holder or municipal taxpayer may resort to equity to prevent municipal corporations or officials from exceeding their lawful powers or

neglecting or violating their legal duties, under any circumstances where the taxpayer's interest will be injuriously affected. And this is the privilege of the taxpayer, though it is not expressly conferred upon him by statute." In private corporations, it is well settled that "if the directors will not protect the rights of the creditors and stockholders, then the latter may and should attend to their own interests. There is no reason whatever why a different rule should be applied to municipal corporations, in which the taxpayers are the beneficiaries upon whose shoulders will ultimately fall the loss and expense which is caused by illegal, fraudulent or tortious acts, or by the inertness and general malfeasances of the municipal authorities." Tiedéman on Mun. Corp. § 395. So, at the instance of citizens and taxpayers, courts exercising equitable jurisdiction will "set aside and annul any and every illegal public official action or proceeding of county, town, or city authorities, whereby a debt against such county, town, or city would be unlawfully created, the public burden upon the community would be unlawfully enhanced, and the amount of future taxation would be unlawfully increased. . . . In the face of every sort of objection urged against a judicial interference with the governmental and executive function of taxation, these courts have uniformly held that the legal remedy of the individual taxpayer against an illegal tax . . was wholly inadequate; and that to restrict him to such imperfect remedy would, in most instances, be a substantial denial of justice." 1 Pom. Eq. Jur. § 260, pp. 347, 348. In this connection, see, also, 2 High on Injunctions, §§ 1239, 1269, 1271; Tied. on Eq. Jur. § 483; and the general conclusion announced by Judge Dillon in vol. 2, § 922, of his admirable work on Municipal Corporations, after a painstaking review of the decisions, English and American, bearing upon the subject now under discussion.

True, it appears in the present case that the city is conducting its plumbing establishment at a profit; but this fact can neither justify its unauthorized action, nor afford any reason why it should not be enjoined from a further exercise of the powers it has usurped. Its officers, with absolutely no warrant or

authority of law, have expended corporate funds in purchasing material and supplies with which to carry on this extra-municipal enterprise, which action amounts in law to what is familiarly known as a misappropriation of trust funds. This should be a sufficient reply to the suggestion that the plaintiff, as a citizen and taxpayer, is not shown to have been hurt. It is not, however, all that may be said. Though now conducting the business at a profit, the time may come when, through mismanagement or fraud on the part of its officers, the municipality may not be able to say that its accounts are "on the right side." At all events, this is not a matter which should be left for the future to determine.

4. Having no right under its charter to do the acts complained of, the city should have been enjoined from exercising the powers which its officials have assumed; and the court erred in denying the injunction sought by the plaintiff.

*Judgment reversed. All the Justices concurring.*