## ANDREWS *v.* CITY OF SOUTH HAVEN.

1. MUNICIPAL CORPORATIONS—ELECTRICITY—TRADE.

Art. 8, sec. 23, of the Constitution authorizes cities to operate electric light plants and to supply the inhabitants with light, heat and power.[1]  See, also, 1 Comp. Laws, § 3258 *et seq.*

[1]As to power of municipality to engage in private enterprise, see notes in 31 L. R. A. (N. S.) 117, 119; 51 L. R. A. (N. S.) 1143.

2. SAME—COMPETITION—INJUNCTION.

In the exercise of proprietary and business powers of a municipal corporation, it is governed by the same rules which control a private individual or a business corporation: in such case the fact that a city engaging in a commercial line of activity competes with and damages one of its inhabitants in his trade or business does not entitle him to relief against municipal action for the city owes him no immunity from competition.

3. SAME—EQUITY.

Nor is a taxpayer who sells electrical appliances entitled to restrain a municipal corporation from competing with him in the selling of electric light fixtures, in which branch of business it engages as an incidental part of its power and light business, in the absence of any showing that taxation was thereby increased or that damage accrued to him as a taxpayer by reason of such commercial enterprise.

Appeal from Van Buren; Des Voignes, J. Submitted April 16, 1915. (Docket No. 131.) Decided July 23, 1915.

Bill by Albert E. Andrews against the city of South Haven for an injunction and other relief. From an order sustaining a demurrer to the bill, complainant appeals. Affirmed.

*Thomas J. Cavanaugh,* for appellant.

*Fred C. Cogshall,* for appellee.

STEERE, J. This is an appeal to review a decree sustaining defendant's demurrer to complainant's bill, filed to restrain alleged *ultra vires* municipal trading, and dismissing the same.

In outline, the material facts disclosed by said bill are as follows: Complainant, who is a resident property owner and taxpayer of the city of South Haven, where he maintains a regular place of business, and is engaged in selling and installing electrical fixtures, bulbs, supplies, wiring, etc., and equips buildings to

use electrical current for lighting and other purposes, charges that defendant is engaged in like business in excess of its corporate authority, in competition with him, unlawfully using public funds for that purpose. Defendant is a city of the fourth class, organized, existing, and "doing business supposedly" under the Constitution of this State and Act No. 215, Pub. Acts 1895. There is in said city a private gas plant which supplies the community with gas for lighting purposes. The city owns and, through its board of public works, operates, a municipal lighting plant from which it supplies itself and inhabitants with electric lights. It keeps on hand, purchased with public money raised by taxation and transferred to a fund for that purpose, a stock of electrical fixtures and accessories similar to those dealt in by complainant, which it sells to its inhabitants, also furnishing to them, for hire, its regularly employed electricians to install wiring and electrical equipment in their private residences and places of business, advertising that it will perform such work, furnish and install fixtures, supply attachments, light bulbs, and all electrical accessories, for private individuals on their premises, in their private residences or places of business, substantially at cost. The bill further alleges that, as a result of the city thus engaging in competition with complainant, he is suffering, and will continue to suffer, irreparable loss and damage; charges that it is not essential or necessary for the city to engage in such business in order to supply its inhabitants with light, and that under the charter it has no authority to do so; therefore prays for an injunction restraining said municipality from "engaging in and carrying on the business aforesaid in the manner aforesaid, and from using the funds of the city raised by taxation for other purposes to buy supplies and keep them for sale and to pay the electricians for the purpose of disposing of their time to

private individuals for hire in the manner aforesaid, and from keeping and selling to private individuals wire, fixtures, bulbs, electrical supplies, or accessories in any amount or of any kind whatsoever."

The direct and only question raised by this bill and the demurrer to it is the right of the city, while operating its electric plant and supplying its inhabitants with current, to also in that connection do electrical wiring on their private premises and furnish fixtures and other accessories essential and convenient in using electricity.

The corporate power of a city to own and operate a municipal electric plant and supply its inhabitants at prescribed rates light, heat, and power is conferred by statute and the Constitution. In the act under which defendant was incorporated, authority to supply light is conferred, and by the Constitution, adopted later, heat and power are included as follows (section 23, art. 8):

"Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof."

The general act providing for incorporation of cities of the fourth class (chapter 88, 1 Comp. Laws), under which defendant was organized, contains various provisions upon the subject of municipal lighting. Section 3258 (2 How. Stat. [2d Ed.] § 5784) confers the power as follows:

"It shall be lawful for any city incorporated or reincorporated under the provisions of this act to acquire by purchase or to construct, operate and maintain, either independently or in connection with the water works of such city, either within or without the city, works for the purpose of supplying such city and the inhabitants thereof, or either, with gas, electric or

other lights at such times and on such terms and conditions as hereinafter provided."

By section 3266 (2 How. Stat. [2d Ed.] § 5792) authority is given the common council to enact such ordinances and adopt such resolutions as may be necessary to carry that object into effect, and to protect and control the property owned and used for that purpose. The act also provides for a board of public works with authority to fix rates, subject to direction of the council, charged, amongst other things, with the following "duty, power and responsibility" (section 3269 [2 How. Stat. (2d Ed.) § 5795]):

"*Second.* The construction, management, supervision and control of such electric or other lighting plants as are or shall be owned by the city."

Section 3270 (2 How. Stat. [2d Ed.] § 5796) provides:

"The said board shall have power to make and adopt all such by-laws, rules and regulations as they may deem necessary and expedient for the transaction of their business, not inconsistent with the ordinances of the city or the provisions of this act."

In this inquiry the governmental powers of a city, by which it regulates and controls its citizens in a sovereign capacity, are not involved. The question raised here relates only to the proprietary or business powers of the city, by means of which it may act and contract for its own private advantage and that of its inhabitants combined. In the exercise of the latter powers, the municipality, acting through its officers, is governed by the same rules which control a private individual or business corporation under like circumstances. *Omaha Water Power Co.* v. *City of Omaha,* 147 Fed. 1 (77 C. C. A. 267, 12 L. R. A. [N. S.] 736, 8 Am. & Eng. Ann. Cas. 614). In such case the fact that a city engaging in a certain line of activity, commercial in its nature, competes with and thereby dam-

ages one of its inhabitants in his business, does not entitle him to relief, for the city owes him no immunity from competition.

The electric light plant which defendant owned and operated, although a municipal public utility, was a business concern or enterprise. In its operation and business management the city had the right and power to do those things naturally connected with and belonging to the running of such a business which a private corporation would have in the same connection. Pond on Public Utilities, § 8. The power to engage in this municipal business activity for the public welfare is necessarily conferred in general terms. To go into details of administration and specify each particular thing which could or could not be done would be unwise and practically impossible. As to details and methods of conducting such authorized business, involving exercise of special knowledge and business judgment, there must be many implied powers. A strict, illiberal, or narrow construction which might hamper the exercise of a reasonable discretion by the municipal authorities in such matters, because the power is given in few words, is not, with perhaps a few exceptions, the tendency of decisions in most jurisdictions. The courts as a rule are not disposed to interfere with the management of an authorized business, conducted by the municipal authorities presumably in the interest and for the benefit of the city and its inhabitants, unless dishonesty or fraud is manifest, or the vested power with its implied discretion has been clearly exceeded or grossly abused. In *Torrent* v. *City of Muskegon*, 47 Mich. 115 (10 N. W. 132, 41 Am. Rep. 715), Justice CAMPBELL, in writing the opinion, foreshadowed the rule which, by the great weight of authority, is applied in construing general powers to a municipality to engage in certain modern business activities for the public welfare, saying in part:

"If cities were new inventions, it might with some plausibility be claimed that the terms of their charters, as expressed, must be the literal and precise limits of their powers. * * * There are many flourishing cities whose charters are very short and simple documents. Our verbose charters, except in the limitations they impose upon municipal action, are not as judiciously framed as they might be, and create mischief by their prolixity. But if we should assume that there is nothing left to implication, we should find the longest of them too imperfect to make city action possible."

In *City of Henderson* v. *Young*, 119 Ky. 224 (83 S. W. 583), where the issue was the right of the city to furnish electricity for light and other purposes to customers beyond the city limits, it is said:

"In the management and operation of its electric plant, a city is not exercising its governmental or legislative powers, but its business powers, and may conduct it in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city council; and it is not within the province of the court to interfere with the reasonable discretion of the council in such matters."

Little direct authority is to be found upon the exact question raised by the facts disclosed in complainant's bill. The two cases cited by counsel for complainant most favorable to his contention are *Attorney General* v. *Leicester Corporation*, 74 J. P. Rep. 385, and *Keen* v. *City of Waycross*, 101 Ga. 588 (29 S. E. 42). The first-named involved the right of the "undertakers," representing the municipal corporation which was authorized to supply electrical current only at the consumer's terminals, to deal in and furnish wiring, electrical fittings, lamps, and other accessories. The court held they could not, basing its decision upon limitations found in the legislation and provisional order in connection therewith having the force of law, saying in part:

"I also think that there is nothing in the sections of

the act of 1847 inconsistent with the construction of 'supply' in the act of 1882 contended for by the plaintiff —namely, that it means the supply of energy to the consumer at his terminals.   *   *   *   When we turn to the provisional order, the interpretation, in my opinion, becomes still plainer, 'consumer's terminals' is there stated to mean 'the ends of the electric lines situate upon any consumer's premises and belonging to him at which the supply of energy is delivered from the service lines.' The undertakers have power to charge for supply of energy and for meters and fittings, but for furnishing and laying lines they have no power to charge except in special cases. By clause 21 of the provisional order, however, they are bound to give a supply of energy on demand, and, if the wiring of the house and provision of fittings is part of the supply, they would be compellable to do it without remuneration, and I think there is force in the plaintiff's argument that this cannot have been intended by the legislature. In my opinion, 'supply,' within the meaning of the act and order, is completed at the consumer's terminals."

While that opinion is upon the same subject as the instant case, the controlling reason for the decision has little application here. In that case distinct restrictions were placed upon the authority given the undertakers, or borough officials, by the wording of the act and provisional order, which defined and limited the scope of their action in express terms, the exact meaning of which was declared, to exclusion, as the court found, of the implied power claimed.

In *Keen* v. *City of Waycross, supra,* it was held that the city of Waycross did not have implied authority under its charter, which authorized the erection and maintenance of a system of waterworks and connecting the city's mains with pipes of water consumers, to engage in a general plumbing business, sell plumbing supplies and material to private citizens, and do contract work in placing the same upon their premises. By analogy, it can be said that certain of the reasons

stated in that opinion tend to support the construction contended for by complainant in this case. That opinion followed the rule of strict construction; it being said, in part:

"Unless the city of Waycross can show express legislative authority to engage in the business in which it has embarked, the acts of its officials of which the plaintiff complains are clearly *ultra vires*. We have no doubt that, under the act of 1889, upon which the city rests its defense, its board of commissioners have ample power to take such steps as are needful in order to render the waterworks system of the city efficient and beneficial to the public. (See Acts of 1889, p. 829.) But the position of the city that, to bring this result, it was necessary to engage in the plumbing business, is utterly untenable, because obviously not well founded in fact. It might as reasonably be urged that, in order to satisfy its patrons, it was necessary for the city to embark in the ice business, as an incident to its right to supply good drinking water to its citizens."

Subsequently, however, that court recognized embarking in the ice business as an incident to the right of a city to supply good drinking water to its citizens, in *Holton* v. *City of Camilla,* 134 Ga. 560 (68 S. E. 472, 31 L. R. A. [N. S.] 116, 20 Am. & Eng. Ann. Cas. 199), where it was contended that the city had "no right to embark in a purely private and commercial business of manufacturing or dealing in a common commodity of commerce, such as ice; and therefore the use of public funds raised by taxation for that purpose will be illegal." While other questions not material here were involved in that case and discussed, the court in disposing of the above objection said, amongst other things:

"The object in bringing, by means of a waterworks system, water in pipes from a distance for use in supplying the needs of a city, is not alone to obtain a sufficient quantity, but also to secure that which is freer from impurities than it is possible to obtain in the city itself. * * * Upon what principle could the doc-

trine rest that liquid water may be delivered by the city to its inhabitants by flowage through pipes, but that water in frozen blocks cannot be delivered by wagons or otherwise?   If the city has the right to furnish its inhabitants with water in liquid form, we fail to see any reason why it cannot furnish it to them in a frozen condition.   *   *   *   Nor do we see any rational objection on the idea that the city will be engaging in a manufacturing enterprise.   The city might perhaps equally as well be said to be manufacturing when by the use of a filtering process it changes impure water into that which is pure.   When, in connection with its waterworks system, it produces ice, it merely, by certain processes, changes the form and temperature of a part of the water supplied by that system. We do not think the operation by the city of Camilla of an ice plant in connection with its waterworks system, for the purpose of furnishing ice to its inhabitants, is in violation of the sections of the Constitution referred to in the plaintiff's petition, or that it is illegal for any reason."

Water sent through pipes to a customer's residence or place of business is water delivered to him ready for use in its then condition.   He may heat or cool it, drink or bathe in it, and make whatever use of it he desires.   But electric current delivered to him at his residence or place of business as it is transmitted over the wires, in its then condition, neither affords him heat, power, or light without further mediums and appliances.   The statute and Constitution do not in terms limit the service to supplying the energy, but authorize the city to supply its inhabitants with water, light, heat, power, and transportation.   It may well be contended that furnishing to customers taking electricity the necessary devices or equipment to produce heat, power, or light from the current is naturally incidental to and an implied power connected with the business of operating an electric light plant.   It does not appear that the municipality in so doing is conducting the business by different methods or under other rules

than those which are observed by and control private business corporations or private individuals in the operation of an electric plant.

The old law of municipal trading, involving the propriety and expediency of authorizing a municipality to engage in general business in competition with its citizens conducting a private business of like kind, has little bearing here; but the rule remains that taxation can only be for public purposes and municipalities have no express or implied power to engage generally in private business. We are past the general question of the validity of legislation authorizing municipal ownership and operation of plants and their necessary equipment to furnish the concentrated population of cities with certain general needs and conveniences, like water, light, heat, transportation, telephone service, etc.; and it is held that the court will not interfere with any reasonable exercise of the implied powers to operate such plants in a business way, and as any private corporation could or would.

The bill does not show that complainant has sustained or will suffer any loss or damage as a taxpayer by reason of what is charged. No increase of taxation for that purpose is shown. He does allege an improper use, in that connection, of money raised by taxation for that purpose, to buy the electrical appliances furnished customers at, approximately, cost. Whether this was as a whole profitable in operating the plant by reason of increased sale of electricity, or otherwise, is not shown. To entitle him to equitable relief as a taxpayer, present or prospective damages must be shown. *Baker* v. *City of Grand Rapids,* 142 Mich. 687 (106 N. W. 208).

We conclude that the learned chancellor who first passed upon this demurrer correctly determined complainant's bill did not show that the defendant exceeded its implied discretionary power in the operation of this

plant, nor state a case which entitled him to equitable relief by injunction.

The decree sustaining said demurrer and dismissing complainant's bill is affirmed, but without costs.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice McALVAY took no part in this decision.