## STATE v. SAN ANTONIO PUBLIC SERVICE CO.

### No. 1763—6619.

Commission of Appeals of Texas, Section A.
March 14, 1934.

BLAIR, Justice.

The state of Texas, upon the relation of its Attorney General, instituted this proceeding seeking to perpetually enjoin appellant, San Antonio Public Service Company, a Texas corporation, from doing certain acts alleged to be in violation of law and ultra vires of its corporate powers. The state alleged that appellant was incorporated under subdivision 60 of article 1121, R. S. 1911, as amended by the 35th Legislature (1917), c. 178, "for the purpose of constructing, acquiring, maintaining and operating lines of electric motor railway," and "for the manufacture, supplying and selling of electricity and gas (artificial, natural, or both), for light, heat and power to the public and to municipalities"; and that in violation of article 1349, R. S. 1925, inhibiting a corporation from employing "its stock, means, assets or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law"; and as ultra vires of its corporate powers, appellant was employing its means and assets: (1) In the purchase for sale and the sale of all kinds and character of electric and gas appliances, maintaining a department, salesrooms, and salesmen therefor, and employing in excess of $150,000 of its means' and assets for such purposes; (2) in the purchase and operation of large gasoline-propelled motor vehicles for transporting sight-seeing parties to points of interest within and more than five miles beyond the city limits of San Antonio, which operations were not authorized by its charter, or in connection with its street railway system, or over routes fixed and approved by

the city of San Antonio or the commissioners' court of Bexar county; and (3) in making loans to various firms and corporations, varying in amounts from $500 to $105,000, and aggregating $209,000 during the past four years.

Appellant answered, in substance: (1) That as a part of its business of manufacturing, supplying, and selling electricity and gas to the public and as incident thereto, it sold electric and gas appliances to its customers for the purpose of increasing its business and to accomplish the legitimate business of its creation; and that the $150,000, or less, so used was reasonable, and was less than one-half of one per cent. of its capital investment; (2) that it was fully authorized to operate the sightseeing busses by virtue of article 6548; and (3) that as to lending money to the various firms and corporations named, all of such loans had been paid; and there was no allegation that appellant was threatening or intending to make further loans; and that in any event the loans were lawful.

A trial to the court without a jury resulted in judgment perpetually enjoining appellant from purchasing and selling electric and gas appliances and from operating the sight-seeing motorbusses; but the injunctive relief as to the alleged loans was denied. Appellant has appealed from the injunction granted against it; and the state has cross-assigned error with respect to the action of the court in refusing to enjoin appellant from making loans.

Appellant was incorporated in 1917, for the purposes aforementioned. Immediately upon its incorporation it took over the properties of the San Antonio Gas & Electric Company, a gas and electricity generating and distribution system; and the San Antonio Traction Company, an electric motor street railway system, and has continued the operation of these properties in San Antonio. On January 1, 1928, appellant acquired what is known as its South Texas Department, which includes electric systems acquired from other corporations or owners in some 30 towns adjacent to San Antonio, and serving Floresville, Boerne, New Braunfels, Stockdale, Falls City, Hondo, and other towns and villages; and in the same year extended its power lines to the city of Seguin, under a contract to sell power to said city at wholesale when needed.

Prior to 1927, appellant and its San Antonio predecessor sold some gas and electric appliances, and especially those not carried by local merchants, such as large hotel ranges and burners for industrial plants. Prior to the purchase of its South Texas Department properties, appellant's predecessors sold all kinds and character of electric appliances to their customers. As to gas appliances in 1927, and as to electric appliances in 1929, appel-

lant entered into the purchase and sale of all kinds of such appliances in San Antonio; and it has continued the policy of its predecessors of the South Texas Department properties of selling to its customers outside of San Antonio all kinds of electric appliances.

After this suit was filed appellant ceased selling gas and electric appliances in San Antonio proper, giving as its reason that the local merchants were rendering sufficient services to its gas and electricity customers with respect to appliances. However, appellant has continued to use space in its main office for demonstrating and displaying for various merchants of San Antonio, all kinds of gas and electric appliances, and to use its funds for paying salesmen to induce its customers to purchase such appliances from the merchants selling them.

In four of the towns of its South Texas Department, appellant maintains salesrooms and salesmen for its electric business; and also at Seguin, where it does not sell electricity to the public, but only sells power to the city when needed. In each of these four towns, local merchants also sell electric appliances to the customers of appellant; and both as to the San Antonio and the South Texas Department territory the trial court found that there is an adequate supply of electric appliances available from other merchants, at prices and on terms equal and similar to those offered by appellant.

█ The trial court also found that "it is not the universal custom in Texas" for utility companies to sell gas and electric appliances. This finding is not material. The material issue is whether the sale of such appliances is the usual method or means employed by utilities in the accomplishment of their main business of manufacturing and selling gas and electricity to the public. The evidence on this issue shows that every privately owned electric company in Texas sells, and for many years has sold, electric appliances. That three of the ten municipally owned electric systems inquired about sell electric appliances or have sold them. That of the thirty-four gas companies operating in Texas, all except four sell gas appliances, and the four not selling appliances are related companies under one management, and one of these maintains a display of appliances in its main office.

The trial court further found as follows: "The sale of appliances is not the means usually and necessarily resorted to by utility corporations in order to supply gas and electricity for light, heat and power, and that the sale of such appliances by utilities is not a direct method of accomplishing the purpose of the incorporation; to the contrary, the sale of appliances by utilities tends only in an indirect manner to promote the interest of such corporation."

█ This is a mixed finding of fact and of law. It is not sustained by the evidence adduced. The evidence above detailed shows the sale of gas and electric appliances is the usual means or method employed by utilities in the extension of their service and in the accomplishing of their main business of manufacturing and selling gas and electricity to the public. Gas and electricity can only be consumed or used through proper appliances; and all witnesses questioned on the subject testified that the amount of gas or electricity sold from a gas or electric distribution system is related directly to the number of gas and electric appliances attached to the system. Typical of such evidence is that of witness Seaholm, manager of the city of Austin's electric system, as follows: "The selling of electric appliances has contributed largely to achieving the approximation of an even load, and on account of the new development of electric appliances, it is becoming more possible every day through their increased use, to achieve the desired result of an even load throughout the twenty-four hours of the day. * * * For the development of the electric light business, and for the encouragement of low rates, it is important to all electric light companies and to their revenue and to their business, that there be as many appliances put on their lines as possible."

The evidence also shows that it is a matter of primary-importance as to the number of appliances a utility company may get on a proposed extension of its service. That as to the extension of its electric lines to all the small cities and towns it is serving, and particularly with respect to the rural section where appellant is serving the farmer with electricity to operate water pumps, feed choppers, dairy appliances, electric stoves, electric refrigerators, washing machines, and electric irons, appellant is the only one undertaking to sell such appliances in such territory. That in the repair and replacement of worn or defective appliances, and in serving its customers with gas and electricity, appellant is directly interested in all such appliances; and that the sale of appliances in its South Texas Department territory could not be intrusted entirely to merchants carrying lines of appliances along with their other businesses. That the stockholders of appellant and its officers determined the method and the plans under which it was operating in selling appliances to its customers; and that such method and plans were in their judgment proper and a legitimate means of carrying out its main business and to accomplish the purpose or business of its creation, to wit, the manufacturing, supplying, and selling of gas and electricity to the public. The evidence also shows that at least for the past twelve years most utility companies have engaged in the sale of gas and electric appliances as an incident to and

as a direct means of accomplishing their main business of selling and supplying gas and electricity to the public.

The question is one of first impression in Texas as to whether a public utility corporation, engaged in manufacturing, supplying, and selling to the public gas and electricity for lighting, heating, and power purposes, may also engage in the purchase and sale of gas and electric consuming devices and appliances to its customers under its implied powers and as incident to the accomplishment of the business of its creation and as not being inhibited by article 1349, providing that "no corporation * * * shall employ or use its stock, means, assets or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law." We have reached the conclusion that under the facts and rules of law applicable appellant had the right, except as to its appliance business at Seguin, to engage in the purchase for sale and the sale of gas and electric appliances in connection with and as being incident to its principal business of manufacturing, supplying, and selling gas and electricity to the public for heating, lighting, and power purposes.

■ It is manifest that article 1349, supra, authorizes a corporation to do whatever may "accomplish the legitimate business of its creation, or those purposes otherwise permitted by law." The statute does not necessarily add to or take from the general rule of implied powers of a corporation, but rather restates the rule by other appropriate language. That is, the rule of implied powers would authorize appellant to do those things which are incident to and reasonably necessary to the carrying out of the powers expressly granted. No distinction can be made between this rule and the provisions of the statute authorizing a corporation to do whatever may "accomplish the legitimate business of its creation." Implied powers of a corporation are necessarily "those purposes otherwise permitted by law"; and we are clear in the view that the evidence detailed shows that the sale of gas and electric appliances tends directly to increase the use and consumption by the public of gas and electricity, and therefore tends directly to "accomplish the legitimate business" of appellant, to wit, the manufacturing, supplying, and selling of gas and electricity to the public.

■■ There is no important disagreement as to the general rule of law involved; but the disagreement arises with respect to the proper application of the rules to the facts of this case, which, as the authorities point out, is the chief difficulty in determining what are the implied powers of a corporation. It

is agreed in this case that the power to sell gas and electric appliances to its customers using gas and electricity for lighting, heating, and power purposes is not expressly granted by the charter of appellant; or by specific statute; but that if appellant has such power, it is by implication of law, as being incident to and as reasonably necessary to accomplish the legitimate business of its creation. The authorities cited by both parties agree that the implied powers of a corporation, such as are necessary to effectuate or carry out the powers expressly granted, or to accomplish the legitimate business of its creation, are not limited to such as are indispensable for those purposes, but comprise all that are necessary in the sense of appropriate and suitable, including the right of reasonable choice of means to be employed. And the authorities further agree that the question presented is one of mixed law and fact; and that whether an act of a corporation comes within its implied powers must be determined in each case from all its facts and circumstances.

As above stated, the question presented is one of first impression in Texas. The authorities from other jurisdictions sustain our above conclusion, and no authority dealing directly with the question presented has been cited or found, holding to the contrary. The leading case sustaining our view is the case of Malone v. Lancaster Gas Light & Fuel Co., 182 Pa. 309, 37 A. 932, 933, by the Supreme Court of Pennsylvania, wherein the stockholders sought to enjoin the issuance of new stock and increase the corporation's bonded indebtedness on the ground that the money so acquired was for operating a department for the sale of gas consuming appliances; the court holding as follows: "It is argued for plaintiff that the charter purpose of the gas company is limited by the words 'manufacturing and supplying illuminating and heating gas,' and that nothing can be included which is not a necessary part or appliance for manufacturing or supplying. This is too narrow and literal a construction, and overlooks the fundamental object of the corporation,—the manufacture and supply of gas to customers for profit. It would be of no use to manufacture gas if there were no customers to buy, and hence the company may fairly supply, not only the gas itself, but, incidentally, such appliances and conveniences as will induce new customers to use gas, or old ones to use more. This is a legitimate mode of extending the company's business, in direct furtherance of its charter object. In considering such questions, much weight must be allowed to the judgment of the parties most interested,—the officers and stockholders of the corporation itself; and while they will not be permitted, as against the commonwealth or a dissenting stockholder, to go

outside of their legitimate corporate business, yet, where the act questioned is of a nature to be fairly considered incidental or auxiliary to such business, it will not be unlawful because not within the literal terms of the corporate grant. This is the general rule even where corporate privileges are most strictly construed. 'Corporations may transact, in addition to their main undertaking, all such subordinate and connected matters as are, if not essential, at least very convenient, to the due prosecution of the former.' Green's Brice, Ultra Vires (2nd Ed.) p. 86, c. 3, § 2, par. v."

This rule was later quoted by the same court in the case of Commonwealth ex rel. Baldrige, Attorney General., v. Philadelphia Electric Co., 300 Pa. 577, 151 A. 344, which was a quo warranto proceeding contesting the electric company's right to sell refrigerating machines operated by electricity, the court holding the sale of electric appliances to be within the implied powers of the company.

These two cases were followed by the district court of Shawnee county, Kan., in the case of Capital Gas & Electric Co. v. Boynton, Attorney General, and were referred to by the Supreme Court of Kansas in 137 Kan. 717, 22 P.(2d) 958, wherein the district court opinions are quoted and approved, where it was held that a corporation engaged in distributing gas to the public had as an incident to its main business the right to sell gas appliances.

In the case of Brooklyn Borough Gas Co. v. Prendergast (D. C.) 16 F.(2d) 615, 636, a suit to enjoin the enforcement of certain legislation with regard to regulation of gas rates, the master reported with respect to the right of the gas company to sell gas appliances as incidental to its business of selling gas, as follows:

"I am not unmindful that the appliance business may not be subject to regulatory control. Use of gas, however, without appliances is impossible. The development of such business is necessarily important to a gas company in its gas sales. * * *

"Of course, a gas company does not have a monopoly of the sale of appliances in its territory, as it has of the sale of gas. They may be purchased elsewhere, in or out of the territory. Possibly not all of the appliances would be purchased of the company. * * * Certainly no company could await the initiative of its prospective customers, nor the efforts of others to sell appliances before doing business. It would have to rely upon its own efforts and not those of others. Until the district is equipped with appliances, there could be no gas business. * * *"

The report was copied as a part of the opinion of the court.

Like holdings were made in the cases of Customers v. Cohoes Power & Light Corp., P. U. R. 1921D, 421; New York Public Service Com.; Kings County Lighting Co. v. Prendergast (D. C.) 7 F.(2d) 192, affirmed by Supreme Court in Ottinger, Attorney General, v. Kings County Lighting Co., 272 U. S. 579, 47 S. Ct. 199, 71 L. Ed. 421.

The following cases hold that even a municipality engaged in the sale of electricity to the public has, as incident thereto, the right to sell and install electric appliances for its customers, or the inhabitants using electricity: City of Mayfield v. Phipps, 203 Ky. 532, 263 S. W. 37; Andrews v. City of South Haven, 187 Mich. 294, 153 N. W. 827, 830, L. R. A. 1916A, 908, Ann. Cas. 1918B, 100, where it is held as follows: "It may well be contended that furnishing to customers taking electricity the necessary devices or equipment to produce heat, power, or light from the current is naturally incidental to and an implied power connected with the business of operating an electric light plant."

The state cites as directly in point the following cases from other jurisdictions: Burke v. Mead, 159 Ind. 252, 64 N. E. 880, 884; Ex Parte Goodrich, 160 Cal. 410, 117 P. 451. Ann. Cas. 1913A, 56; Consumers' Gas Trust Co. v. Quinby (C. C. A.) 137 F. 882; Keen v. Waycross, 101 Ga. 588, 29 S. E. 42; and Holton v. City of Camilla, 134 Ga. 560, 68 S. E. 472, 31 L. R. A. (N. S.) 116, 20 Ann. Cas. 199. Neither of these cases involves the question presented in this case. The Burke-Mead Case determined the question of whether the corporations involved were created for two purposes in violation of the statutes of the state of Indiana; the court holding that the power to manufacture and distribute electricity and the power to manufacture and sell all kinds of electric appliances were not incidental to each other, and were greater powers than those authorized by the statutes. The court expressly denied any attempt "to lay down any exact rule as to what is an incident of a principal power."

In Ex parte Goodrich, the court simply held that a customer of a utility company cannot compel it to furnish him with electric light globes as a part of its service of supplying electricity, and merely finds as to where the required services of the utility company begins and ends as between it and the customer.

The case of Consumers' Gas Trust Co. v. Quinby is another dealing with the Indiana statutes prohibiting a corporation from being organized for more than one purpose, and holds that a corporation organized for mining and selling natural gas could not expend large sums of money to maintain and operate an artificial gas manufacturing plant as an incident to its mining business.

The Keen v. Waycross Case holds that a city did not have the right under its charter to supply water for domestic purposes to also engage in a general plumbing business as incident to the water business. This case was distinguished from gas and electric appliance cases in the Andrews v. City of South Haven Case, supra.

The text-books and our court decisions sustain the doctrine of implied power of corporations in accordance with the aforementioned rules. In the early case of City of Indianola v. Gulf, Western Tex. & Pac. Ry., 56 Tex. 594, it was held that "the power of a corporation * * * extends not merely to those which are absolutely essential or indispensable to the performance of the specified acts authorized by its charter, but as well to those * * * useful to promote the main enterprise," including "the choice of means which are reasonably promotive of the main purpose." Sections 2184 and 2193, Thompson on Corporations; Cansfield and Wormser, Private Corporations (2d Ed.) 258; Green's Brice's Ultra Vires, 65 and 86.

In Comanche Cotton Oil Co. v. Browne, 99 Tex. 660, 92 S. W. 450, it was held that a corporation formed to erect, own, and operate a cotton-seed oil mill might also own and operate such cotton gins as might be necessary and proper as feeders for the oil mill under its implied powers.

In Sealy Oil Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850, it was held that a cotton gin company had as a part of its implied powers the right to buy and sell cotton seed.

In Kasch v. Farmers' Gin Co. (Tex. Com. App.) 3 S.W.(2d) 72, 74, a cotton gin corporation was held to have the implied powers to buy planting seed in carload lots to sell to cotton farmers who patronized the gin. The court restated in succinct language the rule of implied powers of a corporation as follows: "To crystalize the rule, it may be said the implied powers of a corporation embrace those that are reasonably necessary, according to the usual methods of that particular business, to the successful prosecution of the specific business authorized, and is not limited to those things indispensably necessary to the business, provided always the benefits to be derived from the contract are direct, and not so indirect as to be remote."

In the case of Texas & St. Louis Ry. Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268, it is held that a railroad corporation might use its assets for promotion of a hotel in a town served by the railroad, under the rule that "the power of a corporation to contract extends not merely to such subjects as are absolutely essential or indispensable to the performance of specified acts authorized by its charter, but also to such * * * as are designed and may be useful in promoting the main enterprise." Jacksonville, etc., Ry. Co. v. Hooper, 160 U. S. 514, 16 S. Ct. 379, 40 L. Ed. 515. Under the same rule it has been held that a land company engaged in selling town lots may use a part of its assets to build a bridge in order to make the lots more accessible to the city. Fort Worth City Co. v. Smith Bridge Co., 151 U. S. 294, 14 S. Ct. 339, 38 L. Ed. 167.

In the case of Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 1056, 53 Am. St. Rep. 778, it is held that the issuance by two corporations of joint bonds, dividing the proceeds, was equivalent to borrowing money and dividing it between them, each to be the surety of the other; was unlawful because not authorized by statute; but the court again declared the rule of implied powers of a corporation to be that "if the means be such as are usually resorted to, and a direct method of accomplishing the purpose of the incorporation, they are within its powers." However, this case and the case of Bowman Lbr. Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547, cited by appellee, merely hold that the transactions involved were ultra vires of the powers of the respective corporations because the acts complained of constituted a lending of the credit of one corporation to the accomplishment of the purposes of another corporation or person.

In the case of Richardson v. Bermuda Land & Live Stock Co. (Tex. Com. App.) 231 S. W. 337, it is held that a corporation engaged in raising, buying, and selling live stock, had as an incidental power the right to use a part of its assets to promote a line of railway which would serve the lands where the stock were kept and as a means of marketing the stock.

Legion of authorities may be cited extending the rule of implied powers further than the facts of this case extend it; and to paraphrase the language of Mr. Justice Greenwood, in the case of Country Club v. State of Tex., 110 Tex. 40, 214 S. W. 296, 5 A. L. R. 1185, that if it be true that a railroad corporation, a public service corporation, may use its assets to build a hotel in order to encourage more passenger traffic, we see no reason why appellant, also a public service corporation, may not use its means to promote the sale of gas and electric appliances in order to encourage more patrons, as well as to induce its present patrons to use more gas and electricity. We therefore conclude that it is within the implied or incidental powers of appellant to engage in the purchase and sale of gas and electric appliances to its customers of gas and electricity, except as to its appliance business at Seguin, Tex. Appellant does not sell electricity to the public at Seguin, and therefore has no customers at Seguin. It mere-

ly sells, when needed, power to Seguin to be distributed through the municipality's system to the city's customers or inhabitants.

■ With regard to both the method and the amount of means or assets used in the sale of appliances, except as to the Seguin business, we hold that appellant is not exceeding either its charter powers or its implied powers. During the past four years appellant has had an operating capital of from one-half million to one million dollars. Its capital investment is thirty-five million. It has sustained no losses on its appliance business, and there is no proof that the amount of capital used in the sale of appliances is endangering in any way the services which appellant is required to furnish the public. The use of $150,000 annually for the purchase and sale of appliances cannot therefore be regarded as the expenditure of an unreasonable amount to secure the increase it has accomplished in its business, and as a means of accomplishing the business of its creation. Richardson v. Bermuda Land & Livestock Co. (Tex. Com. App.) 231 S. W. 337; Northside Ry, Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 1056, 53 Am. St. Rep. 778.

■■ The proposition of the state that appellant may not invoke the custom of other like corporations of selling gas and electric appliances, as against the contention of the state that it is not authorized by its charter or statute to sell appliances, is correct; but the rule is well settled that a corporation may foster its legitimate business by all usual means; and that "if the means be such as are usually resorted to, and a direct method of accomplishing the purpose of the incorporation, they are within its powers." Northside Ry. Co. v. Worthington, supra; Texas Fidelity & Bonding Co. v. General Bonding Co. (Tex. Com. App.) 216 S. W. 144. There is no dispute in the evidence that the sale of appliances was the means usually resorted to and the most direct method of accomplishing the purposes of utilities engaged in manufacturing, supplying, and selling electricity and gas to the public. Nor does the fact that some other person or corporation may also be engaged in the sale of appliances, and may furnish adequate supplies of appliances on the same or equal terms as appellant furnished them to its customers, have any bearing upon the case; because if appellant has the right to sell appliances, it is not material as to whether others may provide the public with them. Texas & St. Louis Ry. Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Abraham v. Oregon & California R. R. Co., 41 Or. 550, 69 P. 653.

■ Nor is the rule contended for by the state, that "the doctrine of ultra vires is applied more rigorously to public and quasi public corporations than it is to private trading corporations," applicable to this case.

The rule controlling and which we have applied is stated in 10 Tex. Jur. 860, as follows: "In relation to public service corporations, the established rules of statutory construction are: first, that the grant of express statutory power to public service corporations carries with it 'by necessary implication the grant of every other power necessary and proper to the execution of the power expressly granted'; and second, 'that a public grant for public advantage must be construed liberally', so as reasonably to effectuate the purposes of the grant." Imperial Irr. Co. v. Jayne, 104 Tex. 395, 406, 138 S. W. 575, Ann. Cas. 1914B, 322; Humble Pipe Line Co. v. State (Tex. Civ. App.) 2 S.W.(2d) 1018; Texas Central Ry. Co. v. Bowman, 97 Tex. 417, 422, 79 S. W. 295; Ayres v. Gulf, C. & S. F. Ry. Co., 39 Tex. Civ. App. 561, 563, 88 S. W. 436; Stephens County v. McCammon, Inc. (Tex. Sup.) 52 S.W.(2d) 53.

Nor is the rule that because appellant is a corporation with power of eminent domain, its implied powers should be more strictly construed as to what business it may engage in, applicable here. If a railroad company, a corporation with power of eminent domain, may engage in the hotel business as incident to its business of carrying passengers for hire, we see no reason why appellant, with like power of eminent domain, may not sell appliances to its customers, as incident to its business and in accomplishing its business of manufacturing, supplying, and selling gas and electricity to the public.

■ The trial court also erred in perpetually enjoining appellant from operating sight-seeing busses in connection with its street railway business. Article 6548 reads as follows: "Any corporation operating a street or suburban railway or interurban railway, and carrying passengers for hire, is hereby authorized to maintain and operate motor trucks or jitney lines in connection with their said business for the purpose of carrying passengers for hire on the public roads, streets, squares, alleys and highways within the corporate limits of any incorporated city or town under such regulations as may be prescribed by any such city or town, and on the public roads and highways within five miles of the corporate limits of any such incorporated city or town, under such regulations as the commissioners court of such county may prescribe."

Appellant is engaged in operating a street railway system and carrying passengers for hire, and obviously the statute authorizes it to operate sight-seeing busses over the public roads and streets in San Antonio and within five miles of its corporate limits. The right to operate the busses is not conditioned under this statute upon whether the city or county has enacted regulations relating to such operations; and there is no evidence that either the city of San Antonio or the commis-

sioners' court of Bexar county has made any character of regulations relating to the operation of sight-seeing busses by appellant.

■ The state contends, however, that in any event appellant was required to amend its charter after the enactment of article 6548 in 1923, so as to avail itself of its provisions. This contention is not sustained. Article 6548 is a part of the title "Railroads" of the R. S. 1925, and is not a subdivision of article 1302, relating to the purpose clauses of corporations. It specifically authorizes an electric motor street railway corporation like appellant to operate gasoline propelled motor vehicles in connection with its street railway business. The law is settled that the powers of a corporation organized under general laws are not determined alone from its charter provisions, but are also determined from the law under which it is organized or operates. It is also settled law that it is not necessary for the charter of a corporation to contain all the powers conferred by statute; nor is it necessary to amend the charter of a corporation to include powers conferred solely by statute, unless the act itself requires the amendment. Roaring Springs Townsite Co. v. Paducah Tel. Co., 109 Tex. 452, 212 S. W. 147; Texas Central Power Co. v. Jolly (Tex. Civ. App.) 246 S. W. 420; Kuehler v. Tex. Power Corporation (Tex. Civ. App.) 9 S.W.(2d) 435; Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015; Wichita Falls Traction Co. v. Raley (Tex. Civ. App.) 17 S.W.(2d) 157; Thompson on Corporations (3d Ed.) § 188.

The trial court found that appellant was operating its motorbusses in transporting for hire sight-seeing parties to points "more than five miles without the limits of the City of San Antonio," in violation of the provisions of article 6548. The state contends that this finding authorized the injunction. We do not find any evidence to support the finding that appellant was operating motorbusses beyond the five-mile limit. There was some evidence that appellant leased its large busses occasionally to another company that operated them beyond the five-mile limit; but the evidence is undisputed that appellant only operated busses in San Antonio and within the five-mile limit.

■ We do not sustain the state's cross-assignment of error with respect to the action of the trial court in refusing to enjoin appellant from making certain loans. These loans had been paid, and there was no allegation or proof that appellant was threatening or intending to make any such loans at any future time.

The judgment enjoining appellant from maintaining an appliance business at Seguin is affirmed; but the judgment otherwise perpetually enjoining appellant from purchasing and selling gas and electric appliances to its customers, and from operating motorbusses for sight-seeing parties in San Antonio and within the five-mile limit, is reversed, and the injunction in that respect is dissolved.

Affirmed in part; in part reversed and injunction dissolved.

James V. Allred, Atty. Gen., A. R. Stout and Elbert Hooper, Asst. Attys. Gen., and Everett L. Looney, of Austin, for plaintiff in error.

Dan Moody, of Austin, and Templeton, Brooks, Napier & Brown, W. L. Matthews; S. J. Brooks, and Howard Templeton, all of San Antonio, for defendant in error.

CRITZ, Judge.

This suit was filed in the district court of Travis county, Tex., by the state of Texas against San Antonio Public Service Company; a Texas public service corporation. By its petition in the district court the state sought cancellation of the company's charter and an injunction. The district court granted the injunction, but refused cancellation of the charter. On appeal by the company to the Court of Civil Appeals at Austin, that court, in an opinion by Judge BLAIR, in part affirmed and in part reversed and rendered the judgment of the district court. 62 S.W.(2d) 585.

The attached opinion of the Court of Civil Appeals makes a very fair and comprehensive statement of the facts and law questions involved in this case, and correctly decides such law questions. We therefore adopt the opinion of the Court of Civil Appeals as the opinion of the commission.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.