42416. TIFT COUNTY HOSPITAL AUTHORITY v. MRS OF TIFTON, GEORGIA, INC.
(335 SE2d 546)

WELTNER, Justice.

The hospital authority appeals from a judgment enjoining it from selling and renting durable medical equipment to the general public. The trial court found: "The Authority proceeded as planned to execute contracts for the purchase of two competitors of MRS [a private company] and actually began operating its new DME store on or about March 1, 1985, at one of the former locations (in the block adjoining the hospital, but separate and apart from the hospital), previously occupied by one of the competitors purchased." Negotiations were underway for the Authority to occupy leased premises located in downtown Tifton, several miles removed from the hospital.

A private company, MRS of Tifton, Ga., Inc., filed an action complaining that the purchase and operation by the authority of the store was beyond the scope of its statutory authority. The trial court agreed

and issued an injunction. This appeal was filed by the authority, contending that MRS is without standing to maintain this action, and that the activities of the authority which were enjoined by the trial court are not *ultra vires.*

1. The authority insists that MRS lacks standing, as a citizen and taxpayer, to maintain this action. The trial court found as fact that MRS was a citizen and taxpayer of Georgia. "In this state, it is established that a citizen and taxpayer . . . without the necessity for showing any special injury, has standing to sue to prevent [public] officials . . . from taking actions or performing acts which they have no authority to do." *League of Women Voters v. City of Atlanta*, 245 Ga. 301, 303 (264 SE2d 859) (1980), and cases cited. The reason for this rule was stated for the court by Presiding Justice Lumpkin in *Keen v. Mayor &c. of Waycross*, 101 Ga. 588 (3) (29 SE 42) (1897). Keen, a plumber, filed suit as citizen and taxpayer of the City of Waycross to enjoin the city from engaging in the general plumbing business. There, as in the present case, it appeared that the public entity was conducting a business for the purpose of profit. "[B]ut this fact can neither justify its unauthorized action, nor afford any reason why it should not be enjoined from a further exercise of the powers it has usurped. Its officers, with absolutely no warrant or authority of law, have expended corporate funds in purchasing material and supplies with which to carry on this extra-municipal enterprise, which action amounts in law to what is familiarly known as a misappropriation of trust funds. This should be a sufficient reply to the suggestion that the plaintiff, as a citizen and taxpayer, is not shown to have been hurt. It is not, however, all that may be said. Though now conducting the business at a profit, the time may come when . . . the municipality may not be able to say that its accounts are 'on the right side.' " 101 Ga. at 593-94. The authority of *Keen* has been noted with regard to government activities in the field of public health. *Macon Ambulance Service v. Snow Properties*, 218 Ga. 262, 264 (127 SE2d 598) (1962). See also *Brooks v. City of Atlanta*, 254 Ga. 303, 314-315 (328 SE2d 705) (1985).

The trial court correctly determined that MRS had standing.

2. *Keen* also delimited in part the proper scope of the operation by a public entity of a business establishment. "The primary design of the creation of a municipal corporation is, that it may perform certain public functions as a subordinate branch of government; and while it is invested with full power to do everything necessarily incident to a proper discharge thereof, no right to do more can ever be implied. Accordingly, in the absence of express legislative sanction, such a corporation has no authority to engage in any independent business enterprise or occupation such as is usually pursued by private individuals." 101 Ga. at 590 (1). *Woodard v. Smith*, 254 Ga. 39

166

(2) (325 SE2d 377) (1985).

The authority contends that its power to operate a store for the renting and selling of durable medical equipment to the general public arises expressly or by implication from the provisions of OCGA §§ 31-6-2; 31-7-5; 31-7-51; 31-7-71; 31-7-75; 31-7-77; 31-7-96 and 31-7-150. We have reviewed those sections, and invite attention thereto, as well as the entirety of OCGA Ch. 31-7 pertaining to the regulation and construction of hospitals. These cited provisions consume approximately ten pages of published matter, and little value would be served by reprinting them. A careful review discloses *no* legislative authorization — express or implied — for an enterprise which offers durable medical equipment for sale or rent to the general public. Accordingly, we agree with the trial court that these activities were *ultra vires. Day v. Development Auth. of Adel*, 248 Ga. 488, 490 (284 SE2d 275) (1981). See, particularly, now Chief Justice Hill's characterization, at p. 490 of the rule of construction: "Liberally, but not ultra-liberally."

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 9, 1985 —
RECONSIDERATION DENIED NOVEMBER 19, 1985.

*Reinhardt & Whitley, Bob Reinhardt, Walker, Richardson, Hulbert & Gray, Lawrence C. Walker, Jr.,* for appellant.
*J. Hugh Gordon,* for appellee.
*Alston & Bird, Jack Spalding Schroder, Jr.,* amicus curiae.