43143. WASHINGTON ELECTRIC MEMBERSHIP
CORPORATION v. AVANT et al.
43215. LITTLE OCMULGEE ELECTRIC MEMBERSHIP
CORPORATION v. REGISTER et al.
(348 SE2d 647)

SMITH, Justice.

Appellees Horace Avant, Marion Anderson, and the Satellite TV Dealers Association of Georgia filed suit in the Washington County Superior Court to enjoin the Washington Electric Membership Corporation from selling satellite television dishes. Burts V. Register and Satellite filed an identical suit against the Little Ocmulgee Electric Membership Corporation in the Wheeler County Superior Court. Both courts ruled against the electric membership corporations [the EMCs]. The EMCs raise eight issues in their consolidated appeal. We affirm in part and reverse in part.

The appellants contend that the legislature's enumerations of powers and purposes of EMCs authorize them to sell satellite television dishes.

1. A rule of construction may dictate a finding in this case. In *Troup County EMC v. Ga. Power Co.,* 229 Ga. 348 (191 SE2d 33) (1972), this court stated that it would follow the state policy of encouraging economic competition through strictly construing geographical limits placed upon the area in which EMCs were allowed to conduct business. This amounted to a construction that broadened economic competition in the area affected by the conflict leading up to that lawsuit. Here, thus, we will construe the economic aspects of the Georgia Electric Membership Corporation Act [the GEMCA], OCGA § 46-3-170 et seq., in a manner that will broaden competition.[1]

2. The original statement of purpose included in Georgia'a

---

[1] Compare cases construing statutes which relate to "authorities," such as *Tift County Hosp. Auth. v. MRS of Tifton, Ga.,* 255 Ga. 164 (335 SE2d 546) (1985).

GEMCA listed as one purpose, "Assisting in . . . the acquisition, supply, or installation of electrical or plumbing equipment. . . ." Code Ann. § 34B-103. OCGA § 46-3-200 states that one purpose of an EMC is "[to] assist its *members* in the efficient and economical use of energy." OCGA § 46-3-201 (b) (8) grants each EMC the power "to assist its *members* in any manner in the economical use of energy, including, but not limited to the installation of wiring, insulation, electrical machinery, supplies, apparatus, and equipment of any and all kinds of character." OCGA § 46-3-201 (b) (26) grants EMCs the power "[to] have and exercise all powers necessary or convenient to effect any or all of the purposes for which the electric membership corporation is organized." OCGA § 46-3-201 also states that the powers granted to the EMCs may only be exercised as far as they are consistent with the purposes set out for EMCs in OCGA § 46-3-200.

The original statement of purposes permitted EMCs to sell electrical appliances to their *members*. *Galloway v. Mitchell County EMC*, 190 Ga. 428 (9 SE2d 903) (1940). While *Galloway* was drafted under the original enumerations of powers and purposes, we find that the change in language of the REA in 1981 did not limit the EMCs in any new manner. The language describing the power and purposes, in fact, remains quite broad. In light of the legislature's presumed knowledge of *Troup County* and *Galloway*, we will not read into the new statement of purposes a dictate that electric membership corporations cease all sales of electrical appliances.

3. In each of these cases the EMC presented an expert affidavit which stated that satellite dishes constitute "electrical appliances or equipment" according to the definition of the Institute of Electronic and Electrical Engineers. As the appellees did not dispute this evidence, we find that satellite dishes constitute electrical appliances.

4. The EMCs concede that they have gone beyond the delineation of their power set out in *Galloway*, supra, by selling satellite dishes to non-members. OCGA § 46-3-11 forbids all electrical suppliers from "[r]equiring that a consumer receive retail electric service from such electric supplier as a condition for such consumer to receive from such electric supplier or any other person any goods or other services that are not reasonably related to the furnishing of retail electric service to such consumer's premises. . . ."

Essential to the EMCs' argument is the premise that the sale of a satellite dish to a consumer cannot reasonably be related to "the furnishing of retail electric service to such consumer's premises." Elsewhere, they argue that the sale and use of satellite dishes "[contribute] to the efficient and economic use of electricity. . . ." As we have accepted the latter argument earlier in this opinion, we necessarily have found the sale of satellite dishes related to the purchaser's energy consumption and therefore related to the furnishing of that en-

ergy.

Under OCGA § 46-3-11, therefore, an electrical supplier *may* require a consumer to receive retail electric service from "such electric supplier" as a condition for the consumer to purchase a satellite dish from the supplier. Under OCGA §§ 46-3-200, 201, and *Galloway*, supra, an EMC *must* require a consumer to be a member of that EMC before the EMC can sell a satellite dish to the consumer.

The trial courts, thus, ruled correctly to the extent that the injunctions forbade EMCs from selling television dishes to non-members. The courts, however, should have limited the injunctions to that extent, in order to allow EMCs to sell the dishes only to EMC members.

*Judgment affirmed in part and reversed in part. All the Justices concur. Weltner, J., disqualified.*

DECIDED OCTOBER 8, 1986 —<br>RECONSIDERATION DENIED OCTOBER 28, 1986.

*Arnall, Golden & Gregory, Ellis G. Arnall, Allen I. Hirsch, Stephen M. Dorvee, Debra G. Minker, David J. Worley, McMaster & Wommack, Robert W. Wommack, Jr., Russell L. Clark,* for appellants.

*Long, Aldridge & Norman, Phillip A. Bradley, Paul J. Mass, Virginia G. Morrow,* for appellees.

*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Jim O. Llewellyn, Senior Assistant Attorney General, Michael J. Henry, Assistant Attorney General, Cashin & Davis, Tom Watson Brown, Mary W. Craft, Cole, Raywid & Braverman, Paul Glist, Wallace F. Tillman, Parr, Richey, Obremskey & Morton, David S. Richey, Larry J. Wallace,* amici curiae.