S99A0634. FLINT ELECTRIC MEMBERSHIP CORPORATION v. BARROW et al.
(523 SE2d 10)

THOMPSON, Justice.

The question for decision in this appeal is whether an electric membership corporation can sell propane gas to its customers.[1] Because the sale of propane gas is not authorized by the Georgia Electric Membership Corporation Act ("GEMCA"), OCGA § 46-3-170 et seq., we answer this question in the negative.

Flint Electric Membership Corporation ("Flint") was incorporated under the GEMCA. Its purpose, as set forth in its charter, was "to engage in rural electrification." In 1997, its charter was amended

---

[1] Although this Court is without original appellate jurisdiction in this case, we take jurisdiction of it in the interest of judicial economy.

to allow Flint "to engage in any lawful act, business, or activity which in the discretion of the Board of Directors would be beneficial to the members of [Flint]." Thereafter, Flint formed FlintErgy, Inc., a subsidiary corporation, with an initial capitalization of $1,000. Flint owns all of FlintErgy's stock, and a majority of FlintErgy's directors are either directors or officers of Flint.

Flint announced its intention to sell propane gas to its members, either directly, or indirectly, through FlintErgy. It spent thousands of dollars on studies to achieve that goal.

Plaintiffs brought this declaratory judgment action to keep Flint out of the propane gas business. They assert that the GEMCA does not authorize an electric membership corporation to sell or distribute propane gas. The trial court agreed and entered judgment for plaintiffs enjoining Flint from entering the propane gas business. Finding that FlintErgy was the alter ego of Flint, the trial court also enjoined Flint from selling propane gas indirectly through FlintErgy. This appeal followed.

1. OCGA § 46-3-200 provides:

> An electric membership corporation may serve any one or more of the following purposes:
> (1) To furnish electrical energy and service;
> (2) To assist its members in the efficient and economical use of energy;
> (3) To engage in research and to promote and develop energy conservation and sources and methods of conserving, producing, converting, and delivering energy; and
> (4) To engage in any lawful act or activity necessary or convenient to effect the foregoing purposes.

Relying upon OCGA § 46-3-200, specifically subsections (2), (3) and (4), Flint asserts that the GEMCA permits an electric membership corporation to sell all kinds of energy, not just electrical energy. We disagree. As its name implies, the original GEMCA was enacted to encourage "rural *electrification*." Ga. L. 1937, p. 644. It was not aimed at other forms of energy. The amended act, OCGA § 46-3-170 et seq. (Ga. L. 1981, p. 1587), does not alter the original aim.

Even if it can be said that subsections (2), (3) and (4) of OCGA § 46-3-200 authorize an EMC to assist its members in the use of another energy source, promote its development, or engage in lawful activities to effect such a purpose, nothing in the GEMCA authorizes an EMC to *furnish* or *sell* another form of energy. In fact, OCGA § 46-3-201 makes it clear that, while an EMC is empowered to "assist its members . . . in the efficient and economical use of energy," OCGA § 46-3-201 (b) (8), it can only *furnish* or *sell* "electricity." OCGA § 46-

3-201 (b) (7). And while OCGA § 46-3-201 (b) (26) gives an EMC "all powers necessary or convenient to effect any or all of the purposes for which the electric membership corporation is organized," it can hardly be said that it is "necessary or convenient" for Flint to sell propane gas to accomplish its purposes.

Of course, Flint cannot expand its powers beyond those enumerated in the GEMCA by amending its corporate charter. OCGA § 46-3-201 (d). Thus, the fact that Flint's charter, as amended, authorizes it to engage in any lawful business is of no consequence.

*Washington Electric Membership Corp. v. Avant*, 256 Ga. 340 (348 SE2d 647) (1986), does not require a different result. In that case, we held that an EMC was empowered to sell satellite dishes to its members. However, it was undisputed that a satellite dish is an electrical appliance. Id. at 341 (3). And while it is true that we also held that the GEMCA must be interpreted so as to broaden competition, id. at 340 (1), we did not say that it can be interpreted so as to confer powers which do not exist.

2. " 'Whether a subsidiary company is the alter ego of a parent company and whether the subsidiary company was formed to promote injustice or protect fraud are generally questions for the trier of fact. . . .' *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 775 (3) (399 SE2d 529) (1990)." *Mark Six Realty Assoc. v. Drake*, 219 Ga. App. 57, 62 (463 SE2d 917) (1995). The trial court's finding that FlintErgy is the alter ego of Flint is supported by the evidence. After all, FlintErgy is wholly owned by Flint; and a majority of FlintErgy's directors are officers or directors of Flint. More importantly, FlintErgy was incorporated by Flint just to enable Flint to do indirectly what it could not do directly — enter the propane gas market.

In sum, Flint created FlintErgy as a shell and solely for its own convenience and benefit. It follows that the trial court correctly ruled that Flint cannot engage in the sale of propane gas indirectly through FlintErgy. See id. at 61.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 20, 1999 —
RECONSIDERATION DENIED NOVEMBER 15, 1999.

*Daniel, Lawson, Tuggle & Jerles, Tom W. Daniel,* for appellant.
*Groover & Childs, Denmark Groover, Jr., Duke R. Groover, Walker, Hulbert, Gray & Byrd, Charles W. Byrd,* for appellees.
*Autry, Holden & Horton, Charles T. Autry, Kenneth T. Horton,*

*Tisinger, Tisinger, Vance & Greer, Richard G. Tisinger, Jr.,* amici curiae.