**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

November 18, 2014

# In the Court of Appeals of Georgia

A14A0975. GOTTSCHALK v. WOODS et al.

BARNES, Presiding Judge.

After his first lawsuit was dismissed by the United States District Court for the Northern District of Georgia and the dismissal was affirmed by the United States Court of Appeals for the Eleventh Circuit, Dean Mark Gottschalk filed a purported renewal action in the Superior Court of Cobb County. The superior court dismissed all of Gottschalk's claims on the ground that they were time-barred, resulting in this appeal. We conclude that Gottschalk's claims were untimely, whether viewed under Georgia's renewal statute (OCGA § 9-2-61 (a)) or under the tolling provision of the federal supplemental jurisdiction statute (28 USC § 1367 (d)). As we explain below, under Georgia's renewal statute, Gottschalk was required to file his renewal action within six months of the Eleventh Circuit's decision affirming the district court's dismissal of his first lawsuit, which he failed to do. See OCGA § 9-2-61 (a). Furthermore, the tolling provision of the federal supplemental jurisdiction statute

does not apply if state law provides for a longer tolling period, and the federal statute provides only a 30-day grace period for refiling suit. See 28 USC § 1367 (d). Because Georgia's renewal statute provides for a longer tolling period than the federal supplemental jurisdiction statute, the federal statute is inapplicable in this case. Accordingly, the trial court committed no error in concluding that Gottschalk's claims were time-barred under state and federal law, and we therefore affirm.

The record reflects that Gottschalk and his ex-wife had two children together before their divorce in March 2005. In April 2006, Gottschalk's ex-wife filed a petition for modification of child visitation rights in the Superior Court of Cobb County, seeking to have Gottschalk's visits with their children supervised (the "Modification Proceeding"). In December 2008, the superior court entered a final order in the Modification Proceeding that, among other things, granted the requested supervision. This Court subsequently affirmed that order on appeal. See *Gottschalk v. Gottschalk*, 311 Ga. App. 304 (715 SE2d 715) (2011).

In April 2009, Gottschalk filed a pro se complaint in the United States District Court for the Northern District of Georgia against 38 individuals and entities for their alleged misconduct related to the Modification Proceeding (the "Federal Lawsuit"). Gottschalk's complaint was brought pursuant to 42 USC §§ 1983 and 1985 and

2

alleged numerous additional federal constitutional and statutory claims, as well as a state law claim for intentional infliction of emotional distress. He later amended his complaint to allege state law claims for the unauthorized disclosure of confidential medical information, slander, libel, and invasion of privacy.

On March 30, 2010, the district court dismissed Gottschalk's federal constitutional and statutory claims on several grounds. The district court declined to exercise supplemental jurisdiction over Gottschalk's pendant state law claims and dismissed them without prejudice. Gottschalk appealed the dismissal of his federal constitutional claims to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit affirmed the district court in an unpublished opinion on June 16, 2011. The mandate from the Eleventh Circuit was issued on July 19, 2011.[1]

On December 20, 2011, Gottschalk, through counsel, filed the present action in the Superior Court of Cobb County against several of the same defendants who had

---

[1] "A 'mandate' is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed." 5 Am. Jur. 2d Appellate Review § 725. Under the Federal Rules of Appellate Procedure, "the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs." Fed. Rule of Appellate Procedure 41 (a).

3

been named in the Federal Lawsuit (the "State Lawsuit").[2] Gottschalk's complaint asserted claims for intentional infliction of emotional distress, slander, libel, unauthorized disclosure of confidential medical information, and invasion of privacy for alleged misconduct arising out of the Modification Proceeding. The complaint further alleged that the misconduct had occurred from April 2006 until April 2009. Additionally, the complaint alleged that the State Lawsuit was a proper renewal action timely brought pursuant to OCGA § 9-2-61 (a) because it was filed within six months from the date the mandate issued from the Eleventh Circuit in the Federal Lawsuit.[3]

The defendants answered and raised several affirmative defenses, including that all of Gottschalk's claims were barred by the applicable statutes of limitation. The defendants subsequently moved to dismiss Gottschalk's complaint and/or for summary judgment on the same ground. The defendants argued that under Georgia's

---

[2] The defendants named in the State Lawsuit were Dianne Woods; Huff, Woods & Hamby; Susan Volentine; Sheri Siegel; Emmett Fuller; Psychological Affiliates; and Barbara Lassiter.

[3] Gottschalk concedes that all of his claims, except for slander and libel, were subject to a two-year statute of limitation. His slander and libel claims were subject to a one-year limitation period. See OCGA § 9-3-33; *Jahannes v. Mitchell*, 220 Ga. App. 102, 105 (3) (469 SE2d 255) (1996).

renewal statute, OCGA § 9-2-61 (a), Gottschalk's deadline for filing his State Lawsuit was six months from June 16, 2011, the date that the Eleventh Circuit affirmed the district court's order dismissing his claims in the Federal Lawsuit, rather than from the later date when the Eleventh Circuit's mandate was issued. Because Gottschalk did not file his State Lawsuit until December 20, 2011, which was outside the six-month window for renewal calculated from June 16, 2011, the defendants contended that the lawsuit was untimely under OCGA § 9-2-61 (a) and that Gottschalk thus could not take advantage of the statute's tolling provision. The defendants also contended that the State Lawsuit was untimely under the separate tolling provision of the federal supplemental jurisdiction statute, 28 USC § 1367 (d), because it was filed more than 30 days after the dismissal of the Federal Lawsuit and thus fell outside the grace period afforded by that statute.

The superior court entered an order granting the motions to dismiss and for summary judgment that had been filed by the various defendants on the ground that all of Gottschalk's claims in the State Lawsuit were time-barred. The superior court concluded that the applicable statutes of limitation had run on Gottschalk's claims and that his State Lawsuit had not been refiled within the six-month window for renewal authorized by OCGA § 9-2-61 (a). In this regard, the superior court agreed

5

with the defendants that the sixth-month renewal period began to run from the date when the Eleventh Circuit affirmed the district court's dismissal of the Federal Lawsuit, rather than the from the later date when the mandate was issued. Consequently, the superior court concluded that Gottschalk's filing of the State Lawsuit on December 20, 2011 was untimely and dismissed all of his claims. In reaching this conclusion, the superior court did not address the tolling provision of the federal supplemental jurisdiction statute, 28 USC § 1367 (d). Gottschalk now appeals the superior court's dismissal order.[4]

1. Gottschalk contends that the superior court erred in concluding that his complaint was not timely refiled in the State Lawsuit within the six-month window for renewal authorized by OCGA § 9-2-61 (a). According to Gottschalk, the trial

---

[4] Gottschalk filed an amended complaint in the State Lawsuit that incorporated additional factual allegations of misconduct by the defendants purportedly occurring from March 2008 and continuing through December 2010. In its dismissal order, the superior court ruled that Gottschalk's complaint as amended "improperly raised claims against the Defendants that were not alleged in the Federal [Lawsuit]" and that his "conclusory amended allegations stating that the Defendants' actions constituted a continuing tort [were] insufficient to state a timely claim for relief." Gottschalk has not challenged these rulings on appeal and thus has abandoned any allegation of error with respect to them. See *Steed v. Fed. Natl. Mtg. Corp.*, 301 Ga. App. 801, 804, n. 2 (689 SE2d 843) (2009).

6

court should have measured the six-month renewal period from the date that the mandate from the Eleventh Circuit was issued. We disagree.

OCGA § 9-2-61, which governs the renewal of discontinued or dismissed cases, states in relevant part:

> (a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations *or within six months after the discontinuance or dismissal*, whichever is later[] . . . .
>
> . . .
>
> (c) The provisions of subsection (a) of this Code section granting a privilege of renewal shall apply if an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state.

(Emphasis supplied.) By its plain language, Georgia's renewal statute provides that where, as here, the plaintiff's state-law claims were dismissed without prejudice for lack of subject matter jurisdiction by a federal court, and the original limitation period

7

on those claims has expired,[5] the plaintiff may refile his claims within six months after the dismissal. Id. The plaintiff carries the burden of affirmatively proving that his refiled lawsuit meets the criteria for renewal under OCGA § 9-2-61. See *Morrison v. Bowen*, 106 Ga. App. 464 (2) (127 SE2d 194) (1962).

Gottschalk has failed to carry his burden of showing that the criteria for removal have been met in this case. Contrary to his assertion, the start of the six-month window for renewal under OCGA § 9-2-61 (a) was triggered by the date the Eleventh Circuit affirmed the decision of the district court dismissing his Federal Lawsuit, not the later date when the Eleventh Circuit's mandate was issued. Our conclusion in this regard is controlled by *Owens v. Hewell*, 222 Ga. App. 563 (474 SE2d 740) (1996), where we addressed how to measure the six-month renewal period in cases where the original suit was dismissed by a federal court.

In *Owens*, the plaintiffs sought to renew their state-law claims in state court after (1) the federal district court dismissed their federal-law claims on the merits and dismissed their state-law claims without prejudice for lack of subject matter jurisdiction; (2) the Eleventh Circuit affirmed the dismissal; and (3) the United States

---

[5] The renewal statute does not suspend the running of the statute of limitation while the federal lawsuit is pending. See *Stevens v. FAA's Florist*, 169 Ga. App. 189, 190 (311 SE2d 856) (1983).

Supreme Court denied their petition for a writ of certiorari. 222 Ga. App. at 563. We affirmed the dismissal of the plaintiffs' renewal suit as untimely because the original limitations period on the state-law claims had expired and the suit was filed more than six months after the Eleventh Circuit's decision affirming the dismissal of the original suit. Id. at 564-565. We reasoned that "the six-month renewal period . . . ran from the date of the Eleventh Circuit Court of Appeals' affirmance of the [district] court's dismissal of [the plaintiffs'] action," not from the date of the Supreme Court's denial of their certiorari petition. Id. at 565.

*Owens* thus stands for the proposition that when a plaintiff's suit is originally filed in federal court, the district court dismisses the state-law claims, the federal appellate court affirms that dismissal, and the plaintiff does not obtain review of the decision in the United States Supreme Court, the six-month renewal period for refiling the state-law claims starts when the federal appellate court issues its affirmance. See id. *Owens* is consistent with prior Georgia cases addressing earlier versions of the renewal statute which indicated that "6 months of the date of affirmance" by an appellate court was the proper triggering date for the start of the six-month renewal period. See *Central of Ga. R. Co. v. Macon R. &c. Co.*, 140 Ga. 309, 310 (2) (78 SE 931) (1913) (under Ga. Civ. Code 1910 § 4381, an action may

9

be recommenced "within six months of the date of affirmance of the judgment of nonsuit"), superceded by statute on other grounds as stated in *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 475-477 (306 SE2d 290) (1983);[6] *Carmack v. Oglethorpe Co.*, 117 Ga. App. 664 (1) (161 SE2d 357) (1968) (under Ga. Code 3-808, an action may be recommenced "within 6 months of the date of affirmance" of the original action).[7]

Nothing in *Owens* or earlier Georgia cases suggests that the six-month renewal period instead should start to run from the date when the mandate is later issued from the federal appellate court, and Gottschalk has failed to cite to any case law that would support such a position. Indeed, we have previously rejected the argument that this Court's issuance of a remittitur (or mandate as it is called in federal court) has any bearing on the calculation of a limitations period in cases where this Court affirms the trial court and no further review is obtained. Specifically, in *Wilson v.*

---

[6] Ga. Civ. Code 1910 § 4381 provided in relevant part: "If a plaintiff shall be non-suited, or shall discontinue or dismiss his case, and shall recommence within six months, such renewed case shall stand upon the same footing, as to limitation, with the original case[.]"

[7] Ga. Code § 3-808 provided in relevant part: "If a plaintiff shall discontinue or dismiss his case, and shall recommence within six months, such renewed case shall stand upon the same footing, as to limitation, with the original case[.]"

*Hinely*, 259 Ga. App. 615, 615-616 (578 SE2d 254) (2003), we concluded that the running of the statute of limitations for an abusive litigation claim commenced when this Court affirmed the decision of the trial court in the original lawsuit, not on the later date when this Court issued its remittitur. Rejecting the appellant's argument that the issuance of the remittitur should start the running of the limitations period, we concluded that the controversy effectively was at an end when this Court issued its decision affirming the trial court, given that no further review of the decision was sought and obtained by the losing party and the case was not remanded to the trial court for further proceedings. Id. The same reasoning applies in the present case – the Eleventh Circuit's issuance of the mandate is immaterial to the calculation of the renewal period, because the controversy in federal court effectively ended when the Eleventh Circuit issued its decision affirming the district court, given that Gottschalk did not seek and obtain any further review and the case was not remanded to the district court for further proceedings.

For these combined reasons, we conclude that the six-month window for renewal authorized by OCGA § 9-2-61 (a) began to run on Gottschalk's state-law claims when the Eleventh Circuit affirmed the district court's dismissal of those claims in the Federal Lawsuit on June 16, 2011. Because Gottschalk did not file his

11

State Lawsuit until December 20, 2011, which was after the applicable statutes of limitation and the six-month renewal period had expired, the superior court did not err in concluding that his claims were untimely under OCGA § 9-2-61 (a) and thus that he failed to file a valid renewal action under the statute.

2. Gottschalk contends that even if his State Lawsuit was untimely under OCGA § 9-2-61 (a), it was timely under the separate tolling provision afforded by the federal supplemental jurisdiction statute, 28 USC § 1367 (d). Therefore, he argues, the superior court erred in failing to apply section 1367 (d) in this case. Again, we disagree.

The federal supplemental jurisdiction statute, 28 U.S.C. § 1367, contains a tolling provision for supplemental state-law claims that are included in a federal civil action but are later dismissed. Section 1367 provides in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

12

. . .

> (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), *shall be tolled while the claim is pending* and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(Emphasis supplied.) The central issue in the present case is the meaning of the phrase "shall be tolled while the claim is pending."

Statutory interpretation is a question of law, and our review is de novo. *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). In interpreting federal statutes, we must strive "to give effect to the will of Congress," *Griffin v. Oceanic Contractors*, 458 U.S. 564, 570 (II) (A) (102 SCt 3245, 73 LE2d 973) (1982), and "if the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that [is] the end of our analysis." *Zuni Pub. School Dist. No. 89 v. Dept. of Ed.*, 550 U.S. 81, 93 (II) (B) (127 SCt 1534, 167 LE2d 449) (2007).

> The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

13

*Dolan v. U.S. Postal Svc.*, 546 U.S. 481, 486 (II) (126 SCt 1252, 163 LE2d 1079) (2006). Furthermore, if there is ambiguity in a federal statute, "[e]xtrinsic materials . . . [that] shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms" can be consulted. *Exxon Mobil Corp. v. Allapattah Svcs.*, 545 U.S. 546, 568 (II) (C) (125 SCt 2611, 162 LE2d 502) (2005). Additionally, the canons of statutory construction, including unique canons that apply to questions of the scope of federal power, can be consulted in an effort to decide among competing constructions of ambiguous statutory language. See, e.g., *Immigration and Naturalization Svc. v. St. Cyr*, 533 U.S. 289, 299 (II) (121 SCt 2271, 150 LE2d 347) (2001). Georgia courts have made reference to many of these same principles in construing state statutes. See, e.g., *You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 71 (1) (743 SE2d 428) (2013); *Speedway Motorsports v. Pinnacle Bank*, 315 Ga. App. 320, 325 (2) (727 SE2d 151) (2012).

In light of these principles, the first question we must address is whether the tolling language of 28 U.S.C. § 1367 (d) is ambiguous. "A statute is ambiguous when it is susceptible of more than one natural and reasonable interpretation." *Fulton County Bd. of Tax Assessors v. Greenfield Investment Group*, 313 Ga. App. 195, 198 (721 SE2d 128) (2011). Like most courts that have considered this question, we

14

conclude that section 1367 (d) is capable of more than one meaning and thus is ambiguous.[8] We agree with those courts that three interpretations of the tolling provision are possible: (1) the "suspension" approach; (2) the "grace period" approach; and (3) the "substitution" approach.

> Under the "suspension" approach, the statute could be read to stop the running of the statute of limitations and, following dismissal of a claim and the expiration of 30 additional days, tack on however much time remained when the claim was originally filed in federal court. Alternatively, under the "grace period" approach, the statute could abate the expiration of any period of limitations for as long as a claim was pending in federal court plus 30 days after dismissal. Finally, under the "substitution" approach, the statute might replace any state deadline with a federal one, such that parties would have 30 days to refile following dismissal whether or not a longer period might otherwise still remain under state law.

(Citations and punctuation omitted.) *City of Los Angeles*, 328 P.3d at 60 (I).

Courts around the country are split regarding which interpretation ultimately should be adopted for the tolling provision in section 1367 (d), with some courts

---

[8] See *In re Vertrue Inc. Mktg. & Sales Practices Litigation*, 719 F.3d 474, 481 (III) (B) (6th Cir. 2013); *City of Los Angeles v. County of Kern*, 328 P.3d 56, 60 (I) (Cal. 2014); *Turner v. Kight*, 957 A.2d 984, 989 (Md. 2008). But see *Goodman v. Best Buy*, 777 NW2d 755, 761 (Minn. 2010) (concluding that section 1367 (d) "has a plain meaning and is subject to only one reasonable interpretation").

15

adopting the suspension approach[9] and others adopting the grace period approach.[10] Gottschalk argues that we should adopt the suspension approach, but we instead conclude that "Congress enacted section 1367(d) to provide a grace period for claims that would otherwise be lost, [rather than] categorically suspend state statutes of limitations and thereby potentially extend filing periods for years following federal dismissal." *City of Los Angeles*, 328 P.3d at 58.

In reaching this conclusion, we are mindful that the interpretation of federal statutes "does not occur in a contextual vacuum." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (III) (116 SCt 2240, 135 LE2d 700) (1996). Rather, our interpretation is informed by the principle that "courts should not interpret federal law to preempt state sovereignty unless the federal law clearly compels the intrusion." *Municipal Elec. Auth. of Ga. v. Ga. Pub. Svc. Comm.*, 241 Ga. App. 237, 241 (3) (525 SE2d 399)

---

[9] See, e.g., *In re Vertrue Inc. Mktg. & Sales Practices Litigation*, 719 F.3d at 481 (III) (B); *Turner*, 957 A.2d at 992-993; *Goodman*, 777 N.W.2d at 760-761; *Oleski v. Dept. of Public Welfare*, 822 A.2d 120, 126 (Pa.Commw.Ct. 2003).

[10] See, e.g., *Beck v. Prupis*, 162 F.3d 1090, 1099-1100 (IV) (11th Cir. 1998); *Weinrib v. Duncan,* 962 So.2d 167, 169-170 (Ala. 2007); *City of Los Angeles*, 328 P.3d at 65-66 (III); *Dahl v. Eckerd Family Youth Alternatives*, 843 So. 2d 956, 958 (Fl. Dist. Ct. App. 2003); *Harter v. Vernon*, 532 S.E.2d 836, 839-840 (N.C. Ct. App. 2000); *Huang v. Ziko*, 511 S.E.2d 305, 308 (N.C. Ct. App. 1999); *Berke v. Buckley Broadcasting Corp.*, 821 A.2d 118, 123-124 (N.J. Super. Ct. App. Div. 2003); *Juan v. Govt. of North Mariana Islands,* 6 N.M.I. 322, 326-327 (II) (A) (N. Mar.I. 2001).

(1999), citing *Gregory v. Ashcroft*, 501 U.S. 452, 460-461 (II) (A) (111 SCt 2395, 115 LE2d 410) (1991). As the Supreme Court of California recently explained in a thorough analysis of statutory construction principles that apply in this context:

> Principles of federalism dictate a distinct approach to the construction of statutes impinging on state sovereignty, one designed to ensure courts do not assume an incursion where none was intended. When Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute. This principle applies when Congress intends to pre-empt the historic powers of the States or when it legislates in traditionally sensitive areas that affect the federal balance. In such cases, the clear statement principle reflects an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere. Section 1367 (d) is such a balance-altering statute; it preempts state law, supplanting to some extent state statutes of limitations that would otherwise apply to affected claims.

> While Congress has the constitutional authority to preempt state law, we start with the presumption that it has not exercised that power and will find preemption only in the face of a clear and manifest expression of intent to do so. This presumption operates with particular force in areas traditionally the subject of state regulation. Self-evidently, states long have established, and have a uniquely strong interest in, the

17

limitations periods that apply to their own state law claims in their own state courts.

(Citations and punctuation omitted.) *City of Los Angeles*, 328 P.3d at 64 (III). See *Arizona v. United States*, __ U.S. __ (III) (132 SCt 2492, 183 LE2d 351) (2012); *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (III) (125 SCt 1788, 161 LE2d 687) (2005); *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 543-544 (II) (122 SCt 999, 152 LE2d 27) (2002); *Gregory*, 501 U.S. at 460-461 (II) (A). See also *Municipal Elec. Auth. of Ga.*, 241 Ga. App. at 241 (3).

Notably, the presumption against preemption extends beyond the question whether Congress intended any preemption at all; the presumption also affects "questions concerning the *scope* of [the] intended invalidation of state law." (Emphasis in original.) *Medtronic, Inc.*, 518 U.S. at 485 (III). See *City of Los Angeles*, 328 P.3d at 64 (III) (pointing out that "even when an intent to displace is clear, . . . the presumption informs assessments of the breadth of preemption"). Hence, "[t]he effect of that presumption is to support, where plausible, a narrow interpretation of an express pre-emption provision, especially when Congress has legislated in a field traditionally occupied by the States." (Citation and punctuation omitted.) *CTS Corp. v. Waldburger*, __ U.S. __ (II) (D) (134 SCt 2175, 189 LE2d 62) (2014) (plurality

18

opinion). See *Medtronic, Inc.*, 518 U.S. at 485 (III); *Altria Group v. Good*, 555 U.S. 70, 77 (II) (129 SCt 538, 172 LE2d 398) (2008); *Bates*, 544 U.S. at 449 (III); *Cipollone v. Liggett Group*, 505 U.S. 504, 518 (IV) (112 SCt 2608, 120 LE2d 407) (1992).

Applying the presumption to the present case, we conclude that the grace period approach is the most appropriate interpretation of 28 U.S.C. § 1367 (d). Of the three possible interpretations of section 1367 (d), the grace period approach is the least intrusive upon state sovereignty because

> [i]t alters the limitations period only when necessary to prevent a time bar; if a claim is dismissed more than 30 days before the state limitations period would have expired, the grace period approach would change the state period not at all. Even when extension of the limitations period to prevent a bar is necessary, the grace period view distorts the otherwise applicable period only by the difference between when the limitations period ran and the claim was dismissed, plus 30 days[.]

*City of Los Angeles*, 328 P.3d at 65 (III). Consequently, the effect of the presumption in this case is to support a narrow interpretation of section 1367 (d) as simply creating a grace period for refiling suit rather than entirely suspending or annulling a limitations period created by state law. Any other interpretation of the statute "would permit a gross protraction of the limitations period in clear contravention of the

19

underlying [state] policy of statutory limitations on the time for bringing suit." *Berke*, 821 A.2d at 123.[11]

It is true that the presumption against preemption can be rebutted where Congress has made its intent clear. See *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (III) (121 SCt 1322, 149 LE2d 264) (2001). But there is no persuasive evidence, in the federal statutory structure, legislative history, or otherwise, that Congress intended a more expansive preemption of states' statutes of limitation when it enacted 28 U.S.C. § 1367 (d). See *City of Los Angeles*, 328 P.3d at 62-64 (II) (discussing legislative history pertaining to section 1367 (d)).

> For these combined reasons, we adopt the grace period
> approach and construe 28 U.S.C. § 1367 (d) as allowing
> state-law claims that would otherwise be time-barred to be
> refiled in state-court, if the claims are refiled no later than

---

[11] We note that the Eleventh Circuit also appears to have construed 28 USC § 1967 (d) as creating a 30-day grace period for the refiling of state-law claims. See *Beck*, 162 F.3d at 1099-1100 (IV) ("[A] dismissal under section 1367 automatically tolls the statute of limitations on the dismissed claims for 30 days[.]"). "The decisions of the United States Court of Appeals for the Eleventh Circuit are not binding on this Court, even on questions of federal law, but they are persuasive authority. See *Deen v. Stevens*, 287 Ga. 597, 601 (2) (b) (698 SE2d 321) (2010)." *Bobick v. Cmty. & S. Bank*, 321 Ga. App. 855, 861 (3), n. 5 (743 SE2d 518) (2013).

30 days after federal court dismissal.[12] But Georgia's renewal statute provides for a tolling period significantly longer than 30 days by permitting plaintiffs to refile their claims within a six-month renewal period, as discussed supra in Division 1. See OCGA § 9-2-61 (a). And section 1367 (d) expressly states that the federal tolling provision does not apply if "[s]tate law provides for a longer tolling period." Section 1367 (d) therefore does not apply and cannot be relied upon by Gottschalk as a basis for renewing his state-law claims. It follows that the trial court committed no error in concluding that Gottschalk's claims in the State Lawsuit were time-barred and subject to dismissal.[13]

*Judgment affirmed. Boggs J., concurs. Branch, J., concurs fully in Division 1 and concurs specially in Division 2.*

---

[12] The parties dispute whether the 30-day grace period afforded by 28 U.S.C. § 1367 (d) begins to run when a federal district court dismisses the state-law claims, when a federal appellate court affirms the dismissal, or when the mandate is issued from the federal appellate court. We need not resolve this issue because it does not affect the outcome.

[13] Appellee Susan Volentine's motion for the imposition of a penalty against Gottschalk for frivolous appeal is hereby denied. See Court of Appeals Rule 15 (b).

A14A0975. GOTTSCHALK v. WOODS.

BRANCH, Judge, concurring specially.

I concur fully in Division 1. I concur in judgment only as to Division 2 because I do not agree with all that is said in the majority opinion. As such, Division 2 may not be cited as binding precedent. See Court of Appeals Rule 33(a).